## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PRISON SOCIETY, et al.,

      Plaintiffs,

          v.

HONORABLE EDWARD RENDELL, Governor, Commonwealth of Pennsylvania, et al.,

      Defendants.

CIVIL ACTION NO. 3:97-CV-1731

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Plaintiffs' Amended Motion for Summary Judgment (Doc. 82) and Defendants' Motion for Summary Judgment (Doc. 84). For the reasons set forth below, Defendants' motion will be granted in part and denied in part, and Plaintiffs' motion will be granted in part and denied in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(a).

## BACKGROUND

On October 16, 1997, Plaintiffs filed a petition for review in the Commonwealth Court of Pennsylvania, challenging the legality of a ballot question scheduled to be submitted to Pennsylvania voters in November 1997. The proposed ballot question read:

> Shall the Pennsylvania Constitution be amended to require a unanimous recommendation of the Board of Pardons before the Governor can pardon or commute the death sentence of an individual sentenced in a criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the Board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as Board members?

1

Plaintiffs argued that the ballot question violated various provisions of the United States and Pennsylvania Constitutions.

On November 4, 1997, prior to any ruling by the Commonwealth Court, the ballot question was presented to and approved by Pennsylvania voters.  The Court will refer to the resulting changes in the Pennsylvania Constitution as "the 1997 amendments."

On November 12, 1997, Defendants removed the action to the United States District Court for the Middle District of Pennsylvania.  (Doc. 1.)   Plaintiffs filed an amended complaint on January 5, 1998.  (Doc. 9.)  On January 15, 1998, the Court granted a joint motion to remand the state law claims and to stay the federal claims pending resolution of the state law claims.  (Doc. 11.)   While the Commonwealth Court found for Plaintiffs, Defendants prevailed upon appeal.  *See Pennsylvania Prison Soc. v. Commonwealth,* 727 A.2d 632, 635 (Pa. Commw. Ct. 1999), *rev'd,* 776 A.2d 971 (Pa. 2001).

Plaintiffs filed a second amended complaint on July 29, 2002.  (Doc. 22.) Plaintiffs alleged that the 1997 amendments violate the following provisions of the United States Constitution: the rights of life prisoners and prisoners under death sentence under the Due Process Clause (Count I); the *Ex Post Facto* Clause (Count II); the Equal Protection Clause (Count III); Pennsylvania voters' rights under the Due Process Clause (Count IV); the Eighth Amendment (Counts V and VI); and the Guarantee Clause (Count VII).  Plaintiffs also brought claims under the Pennsylvania Constitution (Counts VII and VIII).

Defendants moved to dismiss Plaintiffs' second amended complaint on August 12, 2002.  (Doc. 24.)  On March 6, 2003, the Court issued a memorandum opinion granting

Defendants' motion in part, and denying Defendants' motion in part.  (Doc. 43.)  The Court dismissed Counts III, IV, V, VI, VII and VIII, as well as the portion of Count I regarding the due process rights of inmates with life sentences.  The Court denied Defendants' motion to dismiss the due process claims of inmates under death sentences, as well as Defendants' motion to dismiss Plaintiffs' claim under the *Ex Post Facto* Clause.

Both parties filed motions for reconsideration of the Court's March 6, 2003 memorandum opinion.  (Docs. 44, 47.)  On May 5, 2003, the Court issued a memorandum opinion denying Plaintiffs' motion and granting Defendants' motion in part, and denying Defendants' motion in part.  (Doc. 52.)  The Court determined that Plaintiffs are not entitled to present facts in support of an argument that individual members of the Board of Pardons ("Board") are biased, but allowed Plaintiffs to pursue the argument that the inclusion of a crime victim on the Board impermissibly introduces decision-maker bias into the parole process.  *Id.*

On August 19, 2005, Plaintiffs filed a Motion for Summary Judgment (Doc. 80) and a misfiled Brief in Support (Doc. 81).  Following instructions from the Court to refile, on August 23, 2005, Plaintiffs filed an Amended Motion for Summary Judgement (Doc. 82) and Brief in Support (Doc. 83).  That same day, Plaintiffs previous filings were terminated by the Court.  Then, on September 13, 2005, Defendants filed a Motion for Summary Judgement (Doc. 84) and Brief in Support (Doc. 85).  The parties have also drafted a Stipulations of Fact (Doc. 86-2), and agree, in relevant part, that the following facts are established:

> 8.  There have been no Board considered applications for pardon or commutation by individuals sentenced to death since at least 1967.

3

9.   From January 1, 1970 until November 4, 1997, the effective date of the 1997 Amendment, the following numbers of life sentenced prisoners were recommended for commutation based on a less than unanimous vote:

1970: 0
1971: 12
1972: 9
1973: 6
1974: 3
1975: 0
1976: 3
1977: 0
1978: 1
1979: 2
1980: 0
1981: 1
1982: 0
1983: 0
1984: 0
1985: 1
1986: 1
1987: 1
1988: 9
1989: 12
1990: 3
1991: 8
1992: 10
1993: 9
1994: 3
1995: 3
1996: 1
1997: 0 (January 1 – November 4)

10.   Prior to the vote November 4, 1997, on the 1997 Amendment and beginning with 1987, the following number of life sentenced prisoners who were recommended for commutation by the Board of Pardons on less than unanimous votes were granted commutation by the Governor:

1987: 0
1988: 0
1989: 3 (all granted in 1990)
1990: 0

4

1991: 1 (granted in 1992)
1992: 1 (granted in 1994)
1993: 0
1994: 0
1995: 0
1996: 0
1997: 0 (January 1-November 4)

11.   From January 1, 1973, until June 30, 2005, the following numbers of life sentenced prisoners were recommended for commutation by the Board of Pardons:

1973: 40
1974: 29
1975: 26
1976: 27
1977: 17
1978: 23
1979: 15
1980: 9
1981: 9
1982: 5
1983: 12
1984: 8
1985: 12
1986: 5
1987: 22
1988: 23
1989: 19
1990: 10
1991: 20
1992: 22
1993: 16
1994: 10
1995: 3
1996: 1
1997: 0
1998: 0
1999: 0
2000: 0
2001: 0
2002: 1
2003: 1
2004: 1
2005: 0 (January 1 – June 30)

12.   From January 1, 1973, until June 30, 2005, the following numbers of life sentenced prisoners, listed by year of Board of Pardons recommendation, were granted commutation by the Governor:

1973: 39
1974: 27
1975: 26
1976: 21
1977: 17
1978: 13
1979: 2
1980: 0
1981: 9
1982: 1
1983: 1
1984: 1
1985: 1
1986: 0
1987: 3
1988: 0
1989: 9
1990: 5
1991: 5
1992: 2
1993: 1
1994: 1
1995: 0
1996: 0
1997: 0
1998: 0
1999: 0
2000: 0
2001: 0
2002: 1
2003: 0
2004: 0
2005: 0 (January 1 – June 30)

(Doc. 86-2, at 2-6.)  These Cross Summary Judgment Motions are adequately briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©.  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56,

7

59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1.     Due Process Clause**

Plaintiffs argue that the inclusion of a crime victim on the Board of Pardons, where the recommendation for a pardon or commutation must be unanimous before it may be considered by the governor, impermissibly introduces decision-maker bias into the clemency process in violation of the Due Process Clause.  Plaintiffs have declined to raise this issue in their motion for summary judgment.  Defendants, on the other hand, move for summary judgment in their favor.  For the following reasons, Defendants' motion for summary judgment will be granted with regard to Plaintiffs' remaining Due Process claim.

### a.     *Woodard*

The Supreme Court of the United States addressed the relationship between clemency hearings and the Due Process Clause of the Fourteenth Amendment in *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272 (1998).  Although the Chief Justice,

8

joined by Justices Kennedy, Scalia, and Thomas, concluded that the Due Process Clause provides no constitutional safeguards with regard to clemency procedures, a plurality of Justices agreed that "some minimal procedural safeguards" do apply to clemency proceedings. *Id.* at 288-90. Specifically, Justice O'Connor, joined by Justices Souter, Ginsburg, and Breyer, concluded that, "[j]udicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* at 289 (O'Connor, J., concurring). Whereas, Justice Stevens suggested that "procedures infected by bribery, personal or political animosity, or the deliberate fabrication of false evidence" might violate the Due Process Clause. *Id.* at 290-91 (Stevens, J., concurring in part and dissenting in part).

Defendants stress the minimal nature of the procedures required by due process in clemency proceedings following *Woodard*, and argue that merely being a victim of a crime is an insufficient basis for implying bias. Namely, Defendants point to juror disqualification cases in which courts determined that being a victim of a crime was insufficient grounds for disqualification of a juror; despite the full due process protections applicable to criminal proceedings. *See, e.g., United States v. Gibbs*, 125 F. Supp. 2d 700, 709 (E.D. Pa. 2000) ("Being the victim of a crime is not alone grounds to remove a juror."). Plaintiffs have failed to submit evidence in support of their assertion that the inclusion of a crime victim on the Board will automatically introduce decision-maker bias into the clemency process. Furthermore, the evidence in record fails to support Plaintiffs assertion; as there have been no Board considered applications for pardon or commutation by individuals sentenced to death since at least 1967. (Doc. 86-2, at 2.)

9

What is more, the record in this case is devoid of evidence that the Board is prevented from conducting an impartial investigation or that it utilizes procedures that are arbitrary or capricious.  Consequently, Plaintiffs have failed to establish that the inclusion of a crime victim on the Board, even where the recommendation for a pardon or commutation must be unanimous before it may be considered by the governor, violates the minimal procedural safeguards applicable to clemency proceedings.  Therefore, I will grant Defendants' motion for summary judgment with regard to this issue.

**2.     *Ex Post Facto* Clause**

Article 1, § 10, clause 1 of the United States Constitution states that "no State shall . . . pass any . . . ex post facto Law."  *Id*.  The *Ex Post Facto* Clause applies to a law or policy which "alters the definition of criminal conduct or increases the penalty by which a crime is punishable."  *California Dept. of Corrections v. Morales,* 514 U.S. 499, 506 n.3 (1995).  The *ex post facto* inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change.  *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005) (citing *Weaver v. Graham*, 450 U.S. 24, 29 (1981)).

Plaintiffs move for summary judgment on the grounds that the 1997 amendments violate the *Ex Post Facto* Clause.  Defendants do not dispute that the 1997 amendments are a change in the law which has been given retrospective effect.  Rather, Defendants move for summary judgment on the grounds that Plaintiffs are not disadvantaged by the change.  Specifically, Defendants argue that Plaintiffs have failed to show that the 1997 amendments have created a significant risk of increasing the measure of punishment for life-sentenced inmates as a class, and that Plaintiffs have failed to show individual

10

disadvantage by application of the 1997 amendments.  For the following reasons, I will grant Defendants' motion for summary judgment with regard to Plaintiffs' *ex post facto* claim concerning the inclusion of a crime victim on the Board and I will grant Plaintiffs' motion for summary judgment with regard to Plaintiffs' *ex post facto* claim concerning the change in voting requirements.

### a.      Disadvantaged by the Change

The mere application of the 1997 amendments is not a *per se* violation of the *Ex Post Facto* Clause, and it is not sufficient for Plaintiffs to show that the Board will rely on the new law.  Rather, Plaintiffs must also adduce some evidence that this new law disadvantages those life sentenced prisoners to which the 1997 amendments will be applied by creating "a significant risk of increasing [their] sentences." *Garner v. Jones*, 529 U.S. 244, 255 (2000).

Further, the Supreme Court has cautioned that "the *Ex Post Facto* Clause should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.'" *Garner*, 529 U.S. at 252 (quoting *Morales*, 514 U.S. at 508).  Rather, "the States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Id.* Therefore, to violate the *Ex Post Facto* Clause a retroactive change in the law must create more than a "speculative and attenuated possibility of . . . increasing the measure of punishment. . . ." *Morales*, 514 U.S. at 509.

While the Supreme Court has articulated the relevant inquiry to be used by courts, it has declined to articulate a single formula for determining when legislation violates the *Ex Post Facto* Clause.  *See Morales,* 514 U.S. at 509.  Instead, the Court has noted that

11

the question is one of "degree."  *Id.*   The Supreme Court has encouraged an analysis of

the factual record in making this determination.  *See id.* at 509-513.

### i.    Significant Risk

Defendants, first, argue that the 1997 amendments do not create a "significant

risk" of increasing the measure of punishment applied to life sentenced inmates.

Namely, Defendants argue statistical analysis of the number of recommendations by the

Board and actual commutations granted by the governor demonstrates that the 1997

amendments have had no effect on the rate of commutations granted to life sentenced

inmates.  In particular, Defendants have submitted into evidence a report by Dr.

Christopher K. McKenna, an expert in applied mathematics and statistical analysis, which

concludes that the 1997 amendments had "no statistically significant negative effect on

the percent of inmates getting Board of Pardons recommendations for commutation."

(Doc. 86-3, at 15.)  Plaintiffs argue that the rarity of commutations is an insufficient basis

on which to determine that the 1997 amendments create only a speculative and

attenuated possibility of increasing the measure of punishment applied to life sentenced

inmates.  Specifically, Plaintiffs assert that the Third Circuit Court of Appeals, in *Mickens-*

*Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003), soundly rejected the argument that

commutation was too speculative to trigger an *ex post facto* analysis.

In *Mickens-Thomas*, the Court of Appeals addressed the application of new parole

policies to Louis Mickens-Thomas, a prisoner convicted of rape and murder, who was

sentenced to life imprisonment and then granted commutation.  The Pardons Board in

*Mickens-Thomas* argued that "there was never a 'significant' possibility, given the

unlikelihood of commutation, that Thomas would ever be paroled."  *Mickens-Thomas*,

321 F.3d at 392.  In determining that the application of the new parole policies to Thomas violated the *Ex Post Facto* Clause, the Court of Appeals emphasized that:

> [A]n offender, prior to his conviction and sentencing, is entitled to know not only his maximum possible punishment, but also his or her chances of receiving early release, since this too is a relevant factor in the plea bargaining calculus.   An adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence.

*Id.*  Further, the Court of Appeals concluded that "eligibility for a commutation of a life sentence entails the possibility of parole" and although commutations "are quite rare," application of the new parole policies rendered Thomas' prospects for parole "even more remote" in violation of the *Ex Post Facto* Clause.   *Id.*

In the present case, the Court is asked to decide whether the retrospective application of a new law, which reduces a life sentenced inmate's chance of receiving a recommendation for the already rare avenue of relief of commutation, can create a "significant risk" of increasing the inmate's punishment in violation of the *Ex Post Facto* Clause.  I find that it can.

First, Plaintiffs argue that both the inclusion of a crime victim on the Board and the change in voting requirements, from a majority to unanimity, violate the *Ex Post Facto* Clause as applied.  Plaintiffs, however, have not offered evidence, statistical or otherwise, with respect to the inclusion of a crime victim on the Board.  Alternatively, Plaintiffs have submitted evidence that the change in voting requirements, from majority to unanimity, has significantly affected the likelihood of commutation.  Therefore, I will grant Defendants' motion for summary judgment with respect to Plaintiffs' *ex post facto*

claim concerning the inclusion of a crime victim on the Board.  For the following reasons, I will deny the remainder of Defendants' motion for summary judgment.

The 1997 amendments may not have affected the percentage of inmates who are ultimately granted commutation, however, it is clear from the evidence submitted by the parties that the amendments have significantly reduced the likelihood of a life sentenced inmate receiving a recommendation by the Board for commutation.  Particularly, prior to the passage of the 1997 amendments it was possible for a life sentenced inmate to receive a recommendation for commutation on a less than unanimous vote and such recommendations did result in commutation in some cases; this possibility is completely foreclosed following application of the 1997 amendments.[1]

---

[1]   The parties stipulations of fact provides in relevant part:

> 9.  From January 1, 1970 until November 4, 1997, the effective date of the 1997 Amendment, the following numbers of life sentenced prisoners were recommended for commutation based on a less than unanimous vote:
>
> 1970: 0
> 1971: 12
> 1972: 9
> 1973: 6
> 1974: 3
> 1975: 0
> 1976: 3
> 1977: 0
> 1978: 1
> 1979: 2
> 1980: 0
> 1981: 1
> 1982: 0
> 1983: 0
> 1984: 0
> 1985: 1
> 1986: 1

Furthermore, it is clear from the evidence submitted by the parties that in almost eight years following the passage of the 1997 amendments,[2] the total number of recommendations by the Board for commutation for life sentenced prisoners is significantly lower than the number of recommendations in the eight years prior to the

1987: 1
1988: 9
1989: 12
1990: 3
1991: 8
1992: 10
1993: 9
1994: 3
1995: 3
1996: 1
1997: 0 (January 1 – November 4)

10.  Prior to the vote November 4, 1997, on the 1997 Amendment and beginning with 1987, the following number of life sentenced prisoners who were recommended for commutation by the Board of Pardons on less than unanimous votes were granted commutation by the Governor:

1987: 0
1988: 0
1989: 3 (all granted in 1990)
1990: 0
1991: 1 (granted in 1992)
1992: 1 (granted in 1994)
1993: 0
1994: 0
1995: 0
1996: 0
1997: 0 (January 1-November 4)

(Doc. 86-2, at 2-4.)

[2] Reference is made to the time between November 4, 1997, the effective date of the 1997 amendments, and the last date for which the parties have provided statistical analysis, June 30, 2005.

15

amendments' passage.[3]  Consequently, even though a less than unanimous vote did not

guarantee a life sentenced prisoner commutation prior to the passage of the 1997

amendments and although commutation is not completely foreclosed following the

passage of the amendments, the 1997 amendments significantly reduced the likelihood

of a life sentenced prisoner receiving a recommendation by the Board for commutation

and, as such, the 1997 amendments make commutations and parole even more remote

for those inmates.

     Moreover, the fact that the voting requirements were changed from a majority to

unanimity clearly reflects that the intent of the 1997 amendments was to make it more

---

[3]  The parties stipulations of fact provides in relevant part:

> . . . the following numbers of life sentenced prisoners were
> recommended for commutation by the Board of Pardons:
>
>           * * *
>
> 1989: 19
> 1990: 10
> 1991: 20
> 1992: 22
> 1993: 16
> 1994: 10
> 1995: 3
> 1996: 1
> 1997: 0
> 1998: 0
> 1999: 0
> 2000: 0
> 2001: 0
> 2002: 1
> 2003: 1
> 2004: 1
> 2005: 0 (January 1 – June 30)

(Doc. 86-2, at 5.)

difficult to receive a recommendation for commutation.  Therefore, the 1997 amendments change in voting requirements, from majority to unanimity, creates more than a speculative and attenuated risk of increasing the measure of punishment applied to life sentenced inmates.

### ii.    Individual disadvantage

Defendants next argue that in addition to demonstrating that the risk at issue is "significant", Plaintiffs must adduce some evidence of individual disadvantage.  Defendants assert that Plaintiffs have failed to meet this evidentiary burden.  I disagree.

In *Richardson*, the Third Circuit Court of Appeals emphasized that the key question in its *ex post facto* analysis was whether "the change affected the petitioner's *own* sentence detrimentally."  *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 291 (3d Cir. 2005) (citing *Mickens-Thomas*, 321 F.3d at 393) (emphasis in original).  The district court, in *Richardson*, had concluded that "Richardson [had] not demonstrated the role which [the applicable] amendments played in the Board's decision."  *Id.* at 292.  Therefore, the Court of Appeals determined that Richardson had failed to "adduce some evidence that this new law or policy disadvantaged him by creating 'a significant risk of increasing his punishment.'" *Id.* (quoting *Garner*, 529 U.S. at 255.)

In the present case, Plaintiffs have demonstrated that the 1997 amendments apply to all applicants for commutation, and that the changes created by the 1997 amendments, clearly disadvantage the applicants.  Further, Plaintiffs have offered statistical analysis relating to practices before and after the change in law, which demonstrates that recommendations by the Board on a less than unanimous vote were approved by the Governor and resulted in commutations prior to the 1997 amendments.

17

The requirement of convincing all, rather than a majority, of the Board members that commutation is warranted is a more difficult task for any applicant, and will equally disadvantage every applicant to which the amendment is applied.  A life sentenced inmate need not demonstrate that he would have received a less than unanimous vote by the Board in order to warrant relief.  The evidence offered by the Plaintiffs is sufficient to demonstrate individual disadvantage as required by the Third Circuit Court of Appeals in *Richardson*.  As such, I will deny Defendants' motion for summary judgment with regard to Plaintiffs' *ex post facto* claim concerning the change in voting requirements and Plaintiffs' motion for summary judgment will be granted with regard to this claim.

Therefore, to retroactively apply changes in the voting requirements of the Board of Pardons, from requiring a majority to requiring unanimity, following the 1997 amendments that adversely affect the length of punishment for life sentenced prisoners seeking commutation, violates the *Ex Post Facto* Clause.

### CONCLUSION

First, Plaintiffs have failed to establish that the inclusion of a crime victim on the Board, even where the recommendation for a pardon or commutation must be unanimous before it may be considered by the governor, violates the minimal procedural safeguards applicable to clemency proceedings.  Therefore, I will grant Defendants' motion for summary judgment with regard to Plaintiffs' remaining Due Process claim.

Second, Plaintiffs have not offered evidence, statistical or otherwise, with respect to whether the inclusion of a crime victim on the Board creates more than a speculative and attenuated risk of increasing the measure of punishment applied to life sentenced inmates.  Therefore, I will grant Defendants' motion for summary judgment with respect to

18

Plaintiffs' *ex post facto* claim concerning the inclusion of a crime victim on the Board.

Third, Plaintiffs have, however, submitted evidence demonstrating that the 1997 amendments change in voting requirements, from majority to unanimity, creates more than a speculative and attenuated risk of increasing the measure of punishment applied to life sentenced inmates.  Further, the requirement of convincing all, rather than a majority, of the Board members that commutation is warranted is a more difficult task for any applicant, and will equally disadvantage every applicant to which the amendment is applied.  As such, Plaintiffs have offered evidence sufficient to demonstrate individual disadvantage as required by the Third Circuit Court of Appeals in *Richardson*.  Therefore, I will deny Defendants' motion for summary judgment with regard to Plaintiffs' *ex post facto* claim concerning the change in voting requirements and Plaintiffs' motion for summary judgment will be granted with regard to this claim.

To retroactively apply changes in the voting requirements of the Board of Pardons, from requiring a majority to requiring unanimity, following the 1997 amendments that adversely affect the length of punishment for life sentenced prisoners seeking commutation, violates the *Ex Post Facto* Clause.

An appropriate Order will follow.

 March 13, 2006     /s/ A. Richard Caputo
Date                A. Richard Caputo
                    United States District Judge

19

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PENNSYLVANIA PRISON SOCIETY, et al.,

       Plaintiffs,

           v.

HONORABLE EDWARD RENDELL,
Governor, Commonwealth of
Pennsylvania, et al.,

       Defendants.

NO. 3:97-CV-1731

(JUDGE CAPUTO)

## ORDER

**NOW**, this   13th   day of March, 2006, **IT IS HEREBY ORDERED** that:

A.     Defendants' Motion for Summary Judgment (Doc. 84) is **GRANTED in part** and **DENIED in part**:

    1.     Defendants' motion is **GRANTED** with regard to Plaintiffs' remaining Due Process claim.

    2.     Defendants' motion is **GRANTED** with respect to Plaintiffs' *Ex Post Facto* claim concerning the inclusion of a crime victim on the Board.

    3.     Defendants' motion is **DENIED** with respect to Plaintiffs' *Ex Post Facto* claim concerning the change in voting requirements.

B.     Plaintiffs' Amended Motion for Summary Judgment (Doc. 82) is **GRANTED in part** and **DENIED in part**:

    1.     Plaintiffs' motion is **DENIED** with respect to Plaintiffs' *Ex Post Facto* claim concerning the inclusion of a crime victim on the Board.

    2.     Plaintiffs' motion is **GRANTED** with respect to Plaintiffs' *Ex Post Facto* claim concerning the change in voting requirements.

C.      The Clerk of the Court shall mark this case **CLOSED**.


 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge