**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PENNSYLVANIA PRISON SOCIETY, et al.

      Plaintiffs,

      v.

PEDRO A. CORTES, Secretary of the Commonwealth of Pennsylvania, et al.,

      Defendants.

CIVIL ACTION NO. 1:CV-97-1731

(JUDGE CAPUTO)

## MEMORANDUM

Four motions are presently before the Court. The first two motions are Plaintiff Pennsylvania Prison Society's Amended Motion for Summary Judgment (Doc. 82) and Defendants' Motion for Summary Judgment (Doc. 84) on remand, pursuant to the Judgement of the United States Court of Appeals for the Third Circuit. *See Pa. Prison Soc'y v. Cortes*, 508 F.3d 156 (3d Cir. 2007); (Doc. 116). The third and fourth motions presently before the Court are a "Motion to Approve Consent Judgment, Proposed Motion to Intervene" (Doc. 203) and a "Motion to Amend/Correct" the Motion to Approve Consent Judgment (Doc. 207), both filed by Keith Smith and Jackie Lee Thompson.

The Court finds that individual prisoner Plaintiffs Roger Buehl, Vincent Johnson, and Douglas Hollis do not have standing in this action because they have not suffered or shown that they will imminently suffer an injury resulting from the 1997 Amendments to the Pennsylvania Constitution. The Court also finds that organizational Plaintiffs Fight For Lifers, Graterfriends, Friends Committee to Abolish the Death Penalty, and Pennsylvania

Abolitionists United Against the Death Penalty do not have standing in this action because these organizations have either ceased to exist or acknowledge that they do not satisfy the requirements necessary for organizational standing. Additionally, the Court adopts the Third Circuit Court of Appeals' finding that Plaintiffs Julia D. Hall, Gregory H. Knight, William Goldsby, Joan Porter, Joan F. Gauker, Kurt Rosenburg and Diana Hollis have produced no evidence that they have an interest in anything more than mere generalized grievances of concerned citizens, and that such general, non-particularized grievances do not satisfy the constitutional imperative for standing. The Court will, accordingly, dismiss each of these Plaintiffs from the current action.

The Court does, however, find that Plaintiff Pennsylvania Prison Society satisfies all of the requirements needed to qualify for the organizational exception to the prohibition on third party standing and may pursue relief on behalf of its members in this case. The Court will, accordingly, reinstate its March 13, 2006 Order (Doc. 91) granting in part and denying in part Plaintiff's and Defendants' motions for summary judgment (Docs. 82 & 84).

Finally, the Court finds that Keith Smith and Jackie Lee Thompson's interests are adequately represented by an original Plaintiff, the Pennsylvania Prison Society, and that Smith and Thompson's participation in this case would be superfluous and add unnecessary complexities potentially causing undue delay in this case's resolution. The Court will, accordingly, deny Smith and Thompson's motions relating to intervention (Docs. 203 & 207).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(a).

2

## BACKGROUND

This case arises from the Plaintiffs' challenge to amendments made to the Constitution of the Commonwealth of Pennsylvania, ratified in 1997 (the "1997 Amendments"). In Pennsylvania, prisoners condemned to death or serving sentences of life imprisonment may not be released on parole except when the Pennsylvania Board of Pardons recommends commutation of a sentence and the Governor approves this recommendation. 61 P.S. § 331.21(a). Prior to 1997, a prisoner seeking a commutation of sentence could obtain a recommendation from the Board of Pardons if a majority of the Board's five members voted in the prisoner's favor. In November of 1997, however, a ballot question proposing to amend the Pennsylvania Constitution was presented to and approved by Pennsylvania voters. Following the 1997 Amendments, a prisoner seeking a commutation of sentence had to receive a unanimous vote of the Board of Pardons for a recommendation to be considered by the Governor. The 1997 Amendments also changed the composition of the Board of Pardons. Prior to the 1997 Amendments, the Board of Pardons consisted of the Lieutenant Governor, the Attorney General, a penologist, a medical professional, and an attorney. After the 1997 Amendments, a crime victim was substituted for the attorney and a corrections officer was substituted for the penologist.

On October 16, 1997, while the 1997 Amendments were still a proposed ballot question, the Plaintiffs filed a petition for review in the Commonwealth Court of Pennsylvania, challenging the legality of the ballot question. On November 12, 1997, after the ballot question and the 1997 Amendments had been approved by Pennsylvania voters, Defendants removed the action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1.) Plaintiffs filed an amended complaint on January 5, 1998. (Doc.

3

9.)  On January 15, 1998, the Court granted a joint motion to remand the state law claims and to stay the federal claims pending resolution of the state law claims.  (Doc. 11.)   While the Commonwealth Court found for Plaintiffs, Defendants prevailed upon appeal.  *See Pennsylvania Prison Soc. v. Commonwealth,* 727 A.2d 632, 635 (Pa. Commw. Ct. 1999), *rev'd,* 776 A.2d 971 (Pa. 2001).

Plaintiffs filed a second amended complaint on July 29, 2002.  (Doc. 22.)   Plaintiffs alleged that the 1997 Amendments deprive them of a reasonable expectation of the availability and reasonable possibility of executive clemency and thereby violate provisions of the United States Constitution, including: the rights of life prisoners and prisoners under death sentence under the Due Process Clause (Count I); the *Ex Post Facto* Clause (Count II); the Equal Protection Clause (Count III); Pennsylvania voters' rights under the Due Process Clause (Count IV); the Eighth Amendment (Counts V and VI); and the Guarantee Clause (Count VII).   Plaintiffs also brought claims under the Pennsylvania Constitution (Counts VII and VIII).

Defendants moved to dismiss Plaintiffs' second amended complaint on August 12, 2002.  (Doc. 24.)  On March 6, 2003, the Court issued a memorandum opinion granting Defendants' motion in part, and denying Defendants' motion in part.  (Doc. 43.) The Court dismissed Counts III, IV, V, VI, VII and VIII, as well as the portion of Count I regarding the due process rights of inmates with life sentences.  The Court denied Defendants' motion to dismiss the due process claims of inmates under death sentences, as well as Defendants' motion to dismiss Plaintiffs' claim under the *Ex Post Facto* Clause.

In a Memorandum and Order dated  March 13, 2006 (Doc. 91) responding to the parties' cross motions for summary judgment, this Court ruled in favor of the Defendants as

4

to all claims, but held that the change in voting requirement from majority to unanimity violated the *Ex Post Facto* clause of the United States Constitution for life-sentenced prisoners. Plaintiffs then filed a motion to Amend or Correct the order (Doc. 93), which the Court denied except to the extent that Plaintiffs were allowed to file a motion for attorneys fees. (June 12, 2006, Mem. & Order, Doc. 98.) On July 11, 2006, Plaintiffs filed a Notice of Appeal (Doc. 103) and Defendants filed a corresponding Notice of Cross Appeal (Doc. 105). The Third Circuit Court of Appeals heard arguments on September 19, 2007 and, on November 5, 2007, vacated that this Court's March 13, 2006 Memorandum and Order, dismissed both appeals without prejudice, and remanded the case to this Court "for further proceedings consistent with the Opinion of [the Third Circuit Court of Appeals] to develop the record in order to determine plaintiffs' standing to bring this action." *Pa. Prison Soc'y*, 508 F.3d at 169; (Doc. 116).

In accordance with the Circuit Court's judgment, this Court initiated a five-month discovery period to develop the record with regard to Plaintiffs' standing, and held an evidentiary hearing on the standing issue over three days in June and August of 2008. (Dec. 11, 2007 Order, Doc. 124; Evidentiary Hearing Transcripts, Docs. 167, 211, 212.) At the initiation of this discovery period, the Plaintiffs requested that the Court permit intervention of new parties pursuant to Federal Rule of Civil Procedure 24. The Court denied to allow any new parties at that time. (Dec. 11, 2007 Order, Doc. 124.) On December 26, 2007, Plaintiffs submitted a Motion of Reconsideration of the Court's Order denying intervention. (Doc. 125.) The Court denied this motion in an Order dated May 27, 2008. (Doc. 144.)

Following the conclusion of the discovery hearings held in June and August 2008, the parties provided the Court with several filings specifically addressing the issue of standing

as identified by the Court of Appeals. On December 22, 2008, Plaintiff Pennsylvania Prison Society filed a "Proposed Findings of Fact" (Doc. 221) and a Brief in Support (Doc. 222) of their Motion for Summary Judgment (Doc. 80) on remand. On December 23, 2008, Plaintiff Doug Hollis filed a "Brief on the Issue of Standing." (Doc. 223.) On January 21, 2009, the Defendants filed a "Post-Hearing Brief Addressing the Issue of Standing." (Doc. 224.) On January 26, 2009, Defendants also provided a "Proposed Findings of Fact." (Doc. 227.) On February 2, 2009, Plaintiff Doug Hollis filed a "Reply Brief" addressing Defendants' arguments on the issue of standing. (Doc. 228.) And finally, on February 15, 2009, Plaintiff Pennsylvania Prison Society filed a "Reply Brief" regarding the Amended Motion for Summary Judgment on remand. (Doc. 231.) As the parties have developed the factual record through a renewed discovery period and three-day evidentiary hearing, and as both Plaintiffs' Motion for Summary Judgment and the underlying issue of standing identified by the Court of Appeals have been thoroughly argued and briefed, the Court believes that the parties' motions for summary judgment are, once again, ripe for disposition.

Additionally, on August 22, 2008, Petitioners Keith Smith and Jackie Lee Thompson, inmates serving terms of life imprisonment, filed a "Motion to Approve Consent Judgment and a Proposed Motion to Intervene." (Doc. 203.) On August 29, 2008, Petitioners Smith and Thompson filed a Motion to "Amend and Correct" their prior motion proposing their intervention into the current matter. (Doc. 207.) The Court received Petitioners' Brief in Support (Doc. 209) of these motions on September 10, 2008, and received Defendants' Brief in Opposition (Doc. 210) on September 19, 2008. Petitioners filed a corresponding Reply Brief on October 3, 2008. (Doc. 215.) As these motions have been completely briefed, and because they implicate the same issues of standing present in the original Plaintiffs' Motion

for Summary Judgment, the Court believes that these two motions are currently ripe for disposition.

**DISCUSSION**

**I.      Standing**

The question of standing "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The United States Supreme Court has identified three requirements, derived from Article III of the United States Constitution, that must be met in order for a federal court to adjudicate a particular case.

> This "irreducible constitutional minimum" of standing requires: (1) that the plaintiff have suffered an "injury in fact"--an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of--the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)); *accord Pa. Prison Soc'y*, 508 F.3d at 160-161. "The case-or-controversy requirement under Article III ensures that 'the Federal Judiciary respects the proper -- and properly limited -- role of the courts in a democratic society.'" *Pa. Prison Soc'y*, 508 F.3d at 162 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)). "The standing doctrine serves 'to identify those disputes which are appropriately resolved through the judicial process.'" *Id*. (quoting *Lujan*, 504 U.S. at 560).

"In addition to the immutable requirements of Article III, 'the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.'" *Bennett*, 520

U.S. at 162 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-475 (1982)) The first of these "prudential" standing requirements holds that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. The second prudential standing principle identified by the Supreme Court prevents standing "when the asserted harm is a generalized grievance shared in a substantially equal measure by all or a large class of citizens." *Id*. Finally, the Supreme Court has stated that, in order for a plaintiff to have standing, he or she must allege that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153 (1970).

While the first three, constitutional, standing requirements are "immutable" and must be satisfied without exception, the Supreme Court has recognized certain exceptions to the second three, prudential, standing requirements. Of particular relevance to the case currently before the Court, the Supreme Court has recognized an exception to the prohibition on third party standing and has found that organizations and societies have standing based on injuries to their members. Discussing this exception, the Supreme Court stated that:

> the general prohibition on a litigant's raising another person's legal rights" is a "judicially self-imposed limi[t] on the exercise of federal jurisdiction," not a constitutional mandate. Indeed, the entire doctrine of "representational standing," of which the notion of "associational standing" is only one strand, rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition or by statute) are sufficient to rebut the background presumption (in the statutory context, about Congress's intent) that litigants may not assert the rights of absent third parties.

*United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 557 (1996) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (footnotes omitted). Accordingly,

the Supreme Court has stated that "[i]t is clear that an organization whose members are injured may represent those members in a proceeding for judicial review." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (citing *NAACP v. Button*, 371 U.S. 415, 428 (1963)). Identifying the appropriate test for when an "organizational exception" to the prohibition on third party standing is appropriate, the Supreme Court stated that

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *see accord International Union, United Automobile Workers v. Brock*, 477 U.S. 274 (1986); *New York State Club Assoc. V. City of New York*, 467 U.S. 1 (1988); *United Food and Commercial Workers v. Brown Group*, 517 U.S. 544 (1996); *Pa. Prison* Soc'y, 508 F. 3d at 163; *Public Interest Research Group v. Powell Duffryn Terminals*, 913 F.2d 64, 70 (3d Cir. 1990).

Mindful of these requirements, the Court now considers the issue of standing with respect to the various categories of plaintiffs in this action.

**A.      Individual Prisoner Plaintiffs**

Three individual prisoner Plaintiffs are participating in the current action.  The Plaintiffs' Second Amended Complaint identified these Plaintiffs as follows:

> Plaintiff, Roger Buehl, AM-7936, was, at the time this case was filed, a death-sentenced prisoner convicted and sentenced prior to November 4, 1997. He was among approximately two hundred twenty (220) death sentenced individuals in Pennsylvania who may seek relief through the Pardons Board.

> Plaintiff Vincent Johnson, AF-3422, SCI-Camp Hill, is a life-sentenced prisoner who was convicted on August 7, 1993, of aggravated robbery and murder in the first degree for a murder committed on or about November 5, 1971. He has

filed application[s] with the Board of Pardons on the following dates: April 2, 1991; April 27, 1992; October 24, 1994; and May 23, 1997. His latest application was denied in 1998 by a 2-3 vote.

Plaintiff Douglas Hollis, AF-6355, is a life-sentenced prisoner currently incarcerated at SCI-Coal Township. Prior to the 1997 Amendments, he filed an application to the Board of Pardons and received approval of his commutation by a 4-1 vote of the Board, but was rejected by Governor Robert Casey. He subsequently filed another application to the Pardons Board, which was denied.

(Doc. 22 ¶¶ 10-12.)

In its review of this Court's March 13, 2006 Memorandum and Order, the Third Circuit

Court of Appeals found that:

Crucially, the record contains no evidence that any of these prisoner plaintiffs have received or may expect to receive a majority vote (i.e., 3-2 or 4-1) of the Board of Pardons after the 1997 Amendments. Such allegations (on a motion to dismiss) or a showing by affidavit or other evidence (on a motion for summary judgment) of a 3-2 or 4-1 vote of the Board could demonstrate that a plaintiff was injured by the 1997 Amendments.

The complaint does not allege and the record contains no evidence that any of these prisoner plaintiffs has had any actual injury or presently has an application pending before the Board of Pardons. Nor does the complaint allege or the record evidence show that any of the prisoner plaintiffs has immediate plans to file such an application. Nor is there any record evidence to suggest that these specific prisoner plaintiffs, even should they apply, are likely to have received a recommendation for commutation under the pre-1997 regime, for ultimate decision by the Governor. The only allegation concerning these prisoner plaintiffs' commutation prospects is the very general prediction that "[s]aid plaintiffs will, in the future, apply for executive clemency through the Board."

* * *

Here, prisoner plaintiffs have not demonstrated (1) "actual or imminent" harm because they failed to allege or adduce evidence of any concrete plans to apply for a commutation in the immediate future; nor (2) "distinct and palpable" injury because they have not shown that, even if they do apply to the Board of Pardons, they are sufficiently likely to be personally harmed by the changed voting requirement in the 1997 Amendments -- i.e., that they are likely to receive a majority of votes favoring a commutation recommendation from the Board.

\* \* \*

Even if prisoner plaintiffs had alleged and sufficiently introduced evidence that they had imminent plans to file an application for a commutation, they would still fail to demonstrate injury in fact because they have not shown a sufficient *likelihood* that they *personally* would be harmed by the change in voting requirements wrought by the 1997 Amendments.

*Pa. Prison Soc'y*, 508 F.3d at 165-166.  The Court of Appeals further noted that "[n]one of the prisoner plaintiffs can establish a 'concrete and particularized' injury without having obtained at least three votes in the Board -- which would have been sufficient for its recommendation of commutation of sentence before the 1997 Amendments but are insufficient under the current provisions."  *Id.* at 167.

### 1.    Plaintiff Roger Buehl

As already mentioned, this Court, in accordance with the Circuit Court's Judgment, initiated a five-month discovery period in order to develop the record with regard to Plaintiffs' standing. The Court also held an evidentiary hearing over a combined three day period in June and August of 2008.  At the start of that hearing, Plaintiffs' counsel represented to the Court that

Roger Buehl, has had his sentence vacated, was retried, resentenced to life in prison and has answered interrogatories . . . saying that he has no current intention of applying for commutation.  So he will not meet the standard set down by the third circuit [sic] in its opinion, and [Plaintiffs] will not present any further evidence regarding Mr. Buehl.

(June 2, 2008 Trans., Doc. 167, at 3:20-4:1.)  Based on this representation, and finding no other evidence indicating that the 1997Amendments caused Mr. Buehl injury, the Court finds that Mr. Buehl does not have standing and will dismiss him from the current action.

The remaining two individual prisoner Plaintiffs, Vincent Johnson and Douglas Hollis,

both argue that they have standing under the standard articulated by the Third Circuit Court of Appeals.  Plaintiffs Johnson and Hollis both offered testimony during the evidentiary hearing before this Court in June and August 2008.

## 2. Plaintiff Vincent Johnson

In his testimony, Plaintiff Vincent Johnson described his efforts to obtain a commutation of his sentence, stating that he last applied for commutation in 1998, at which time he received a public hearing, but was not recommended for commutation based on a two-to-three (2-3) vote by the Board of Pardons.[1] (Aug. 6, 2008 Trans., Doc. 211, at 74:16-75:9.)  Plaintiff Johnson acknowledged that, based on his 1998 application and resulting vote, his sentence would not have been reviewed by the Governor of Pennsylvania under either the pre- or post-1997 rules.  (*Id*. at 75:10-12.)  Plaintiff Johnson also explained that he had not made a similar application since 1998, but had collected information and completed a draft of a new application that he planned to file following the completion of pending state proceedings in his case.  (*Id*., at 75:13-77:6; 78:9-79:10.)

In their Post-Hearing Brief Addressing the Issue of Standing, the Defendants identify the first prong of the two-part test for standing articulated by the Third Circuit Court of Appeals in this case as "the requirement of a pending application or a concrete plan to submit one on the immediate future. . .."  (Doc. 224, at 6.)  According to Defendants, "Johnson . . . is nowhere close to satisfying this requirement,"  because he testified that planned to file an application on some unknown future date and, as a result, "the requisite

---

[1]

By way of clarification, the Court notes that two (2) Board of Pardons members voted in favor of recommending Plaintiff Johnson's sentence for commutation, while three (3) members voted against recommending commutation.

'high degree of immediacy' needed for this aspect of standing is absent . . .." (*Id.*)  In response to Defendants' arguments regarding Johnson's standing, Plaintiffs note that the Board of Pardons maintains a policy of not entertaining commutation petitions while post-conviction challenges remain active.  (Pa. Pr. Soc. Prop. Supp. Findings of Fact, Doc. 221 ¶ 83;  Doc. 149, Ex. 7.)

Based on its review of the arguments and evidence presented, the Court finds that Plaintiff Vincent Johnson does not have standing in the current case.  While the record clearly indicates that Mr. Johnson has been an exemplary inmate for the substantial majority of his sentence, he has not shown that he has suffered an injury due to the 1997 amendments to the Pennsylvania Constitution.  The Court takes particular note of the Plaintiffs' argument that Mr. Johnson's state court challenges to his sentence foreclose him from applying for commutation or would hurt an application's chance of success.  While the Board of Pardons does clearly state that exhaustion of other legal remedies is considered as a factor when the Board reviews commutation of sentence applications, (*see* Doc. 149, Ex. 7), Mr. Johnson testified that he had previously filed commutation applications while other challenges to his sentence were still pending (Doc. 211, at 75:17-76:7).  Moreover, the Court does not read the Board of Pardons' list of relevant factors as prohibiting commutation applications during the pendency of other challenges a prisoner may have made concerning his conviction or sentence.

While the evidence produced by Mr. Johnson throughout this case suggests that he possesses many attributes improving his chance of receiving a majority vote from the Board of Pardons recommending that his sentence be reviewed by the Governor, Mr. Johnson has not been successful in obtaining such a majority vote since the 1997 Amendments went into

13

effect.  Accordingly, the Court finds that Mr. Johnson's commutation applications have not been impacted by the 1997 Amendments to the Pennsylvania Constitution.  As already mentioned, the Court is aware that Mr. Johnson plans to file a new commutation application, creating a possibility that he will successfully obtain a majority vote from the Board of Pardons.  However, the Court finds that the possibility of Mr. Johnson receiving a Board of Pardons' majority vote at some indeterminate future date does not constitute an "imminent" injury sufficient to provide Mr. Johnson with standing in the current case.  Based upon its finding that Mr. Johnson has not suffered and will not imminently suffer an injury due to the 1997 Amendments, the Court determines that Plaintiff Vincent Johnson does not have standing and will dismiss him from the current action.

### 3. Plaintiff Douglas Hollis

In his testimony before this Court, Plaintiff Douglas Hollis recounted his several commutation applications.  Notably, Plaintiff Hollis testified that, in 1992, he received a four-to-one (4-1) vote from the Board of Pardons, resulting in a review, and subsequent denial, of Mr. Hollis' application by then-Governor Robert Casey.  (Doc. 211, at 104:13-24.)  Mr. Hollis, however, also testified that his subsequent, 1994 application received a one-to-four (1-4) Board of Pardons vote against a recommendation to the Governor.  (*Id.*, at 105:18-21.)  In addition to these past applications, Mr. Hollis also stated that he currently has an application pending with the Board of Pardons that he filed in October 2007.  (*Id.*, at 105:24-106:3.)

In addition to his recounting of his prior application efforts, Plaintiff Hollis has provided the Court with substantial testimony and arguments supporting his contention that he is likely to receive a majority vote from the Board of Pardons.  Notably, Plaintiff Hollis testified that

14

numerous people have offered him statements of support, spoke about his relationship with his family, and provided details about the many leadership, educational and work-related accomplishments he has achieved while serving his sentence. (*Id*., at 106:23-111:3.) Mr. Hollis also expressed remorse for his crime, and noted that he had received the Pennsylvania Prison Society's "Inmate of the Year" award in 2002. (Aug. 6, 2008 Trans., Doc. , at 4:8-6:11, 7:13-16.) In his Brief on the Issue of Standing, Plaintiff Hollis also offers an explanation for the 1994 one-to-four Board of Pardons vote against a recommendation to the Governor stating that

> [Hollis' 1994] hearing was held immediately in the aftermath of the emotionally charged atmosphere of the November 1994 Gubernatorial election, wherein Lieutenant Governor Singel had lost to Governor Ridge, in part based upon Singel's recommendation to commute the life sentence of Reginald McFadden, who turned around and committed a murder and rape in New York less than a year after he got out.

(Doc. 223, at 15.) Accordingly, Hollis argues that "little weight should be accorded to this record vote, given the harsh atmosphere in Pennsylvania at that time against lifer commutations." (*Id*.)

In contrast, the Defendants argue that Hollis has "not demonstrated that there is a substantial likelihood that [he] will be harmed by the 1997 amendments, *i.e.,* that [he is] likely to receive a majority, but not unanimous, vote by the Board on an application for commutation." (Doc. 224, at 7.) Notably, the Defendants argue that the evidence produced by both Plaintiffs Hollis and Johnson "serves to establish only how a very differently composed Board operated during a discrete period of time in the now distant past" and that they have "presented no evidence that the same type of evaluation exists *today*. (*Id*., at 7-8)(emphasis original). The Defendants continue by stating,

> This is a critical–indeed, a fatal–omission given the nature of executive clemency in Pennsylvania. Whether a recommendation to the Governor will be made, hinges solely on the unique, personal views of the five individuals who comprise the Board. Over time, the Board's membership has changed. Plaintiffs have presented no evidence establishing how precisely an application would be evaluated, let alone voted upon, by members of the current Board.

(*Id.*, at 8)(internal citations omitted.) Summarizing this argument, the Defendants state that "plaintiffs have not shown what may have been the case in the past is the case now, and as a result, there is no reliable way of predicting the fate of an application at present." (*Id.*, at 8-9.)

The Defendants also present several arguments suggesting that Hollis would not, or will not, receive a Board of Pardons recommendation for review. In particular, Defendants note that the statistics tracking recommended commutations for life sentences between 1989 and 2005 show that, after 1995, the number of Board recommendations dropped significantly, and that in six (6) of the eleven (11) years between 1995 and 2005 the Board of Pardons made no recommendations to the Governor. (*Id.* at 9.) Defendants also point to statistics showing that commutation applications are rarely successful in reaching the merits review stage where a Board of Pardons' recommendation vote occurs. (*Id.*, at 10.) According to the Defendants, "the important consideration [when granting or denying a Board of Pardons merits review] is not whether [applicants] are good candidates, but whether their applications are likely to be in the very small number that clear the hurdle of merit review." (*Id.*, at 11.) Defendants contend that "[t]here is nothing here to establish that plaintiffs' applications exceed those of other 'good' applicants." (*Id.*)

The Defendants further argue that "even if it could be said that [Plaintiffs Hollis or Johnson] have demonstrated it was likely they would actually reach the point where they

would be subject to the unanimous vote requirement, the record still fails to establish that it is likely that they would be adversely affected." (*Id.*) In this regard, the Defendants note that, in the last ten years, when the Board of Pardons voted on the merits of prisoners' commutation applications, there has been an almost identical number of majority votes and unanimous votes. Defendants, accordingly, argues that this statistic shows that "it is equally likely that plaintiffs would *not* be harmed, since a unanimous vote would not qualify as such." (*Id.*, at 12)(emphasis original).

Finally, with specific regard to Plaintiff Hollis, the Defendants state:

On Hollis' last application, in November 1994, the vote was 1-4 *against* a recommendation to the Governor. Though plaintiffs attempt to explain this emphatic rejection of his application [as] a consequence of the then-recent incident involving pardoned lifer Reginald McFadden, the statistical information about the Board's disposition of applications, shows it to be consistent with its overall handling of the others it considered during the last fifteen years. . . those statistics establish that it is rare that an application will ever involve a "majority" vote.

(*Id.*, at 12-13)(emphasis original).

Based on the parties' arguments and the evidence produced during the renewed discovery period, the Court finds that Plaintiff Douglas Hollis has not shown that he has suffered, or will imminently suffer, an injury stemming from the 1997 Amendments to the Pennsylvania Constitution, and thus, does not have standing in the current case. The Court takes particular note that Mr. Hollis has previously been successful in obtaining a majority Board of Pardons' vote recommending review to the Governor, and also notes that Mr. Hollis appears to have been an exemplary inmate, possessing many traits that will improve his chances of successfully navigating the commutations process. However, the Court believes that both Mr. Hollis' personal commutation application history, along with the general

commutations application review "trends" identified by the Defendants, show that the injury claimed by Mr. Hollis is, at this time, speculative. In light of evidence showing disparate outcomes for applications made by prisoners with similar characteristics and the disparate votes from Hollis' last two Board of Pardons reviews, the Court is unable to make any determination as to whether Hollis is likely to receive a majority vote in favor of review on the application currently pending before the Board of Pardons. Based on the evidence in this case, the Court finds that Hollis has shown only that there is a possibility that he may receive a majority vote, and thus, be harmed by the 1997 Amendments. However, a potential injury, happening on some indeterminate future date is neither concrete nor particularized nor imminent, and does not satisfy the "irreducible constitutional minimum" of standing established by Article III. *See Bennett*, 520 U.S., at 167. As such, the Court finds that Plaintiff Hollis does not have standing to bring the present action and will dismiss him from this case.

**B.     Organizational Plaintiffs**

Five organizational Plaintiffs are participating in the current action. The Plaintiffs' Second Amended Complaint identified these Plaintiffs as follows.

Plaintiff, Pennsylvania Prison Society, Inc. ("PPS"), is a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania. The Society was founded in 1787 and has as [sic] its principal offices at 2000 Spring Garden Street, Philadelphia, Pennsylvania 19103-3805. The purpose of PPS is to advocate for a humane, just, and restorative correctional system, and to promote a rational approach to criminal justice issues. PPS brings this action in its own right and on behalf of its members, including prisoners and adult individuals interested in its above-mentioned purposes

Plaintiff, Fight fir Lifers, Inc. ("Lifers"), is a non-profit corporation, having its principal office address [at] P.O. Box 7691, Philadelphia, Pennsylvania 19101. The purpose of Lifers is to provide support to all life sentenced prisoners in Pennsylvania concerning their just and fair treatment in the correction and

18

justice system of Pennsylvania. Lifers' mission is to educate the public as to the realities of serving a life sentence in the Commonwealth of Pennsylvania, including the necessary of parole review for life sentence prisoners on a case-by-case basis and to provide support through the commutation application process for deserving individual lifers. Lifers also acts as a network communicating with all life sentenced prisoners providing information, comfort, hope and support to those sentenced and their families and friends.

Plaintiff, Graterfriends, Inc. ("Graterfriends"), is a non-profit corporation, having its principal office address at 2323 Carol Lane, Norristown, PA 19401. It's [sic] membership totals approximately 3,300 individuals, many of whom are life-sentenced prisoners. Graterfriends advocates on behalf of and provides support to all life sentenced prisoners as well as other prisoners, their families and friends and has regularly published a newsletter informing its members and others of matters involving prisoners' treatment, and other matters. It also acts a public advocate for the just and fair treatment in prison of its members and all sentenced prisoners.

Plaintiff, Friends Committee To Abolish The Death Penalty, Inc. ("Friends Committee"), is a non-profit corporation, having its principal office address at P.O. Box 7691, Philadelphia, Pennsylvania. The purpose of Friends Committee is to advocate for the abolishment of the death penalty in Pennsylvania, to advocate for and counsel death sentenced inmates incarcerated in Pennsylvania on issues relating to their treatment in the correctional system, individually and as a class, and also on issues relating to their particular cases.

Plaintiff, Pennsylvania Abolitionists United Against The Death Penalty ("Abolitionists"), in an unincorporated association, and is a project of the New Society Educational Foundation, Inc., a 501(c)(3) not for profit Pennsylvania corporation with offices in Philadelphia, Pennsylvania. Abolitionists has offices at 240 South Ridley Creek Road, Media, Pennsylvania. The purpose of Abolitionists is to advocate for the abolishment of the death penalty in Pennsylvania, to advocate for just and fair treatment of those incarcerated on death row in Pennsylvania, to provide support to those on death row and their families, to educate the public at large as to the reasons why the death penalty should be abolished and to work with and support the family members of murder victims.

(Doc. 22 ¶¶ 5-9.)

In its review of this Court's March 13, 2006 Memorandum and Order, the Third Circuit Court of Appeals reviewed the prudential limitation on organizational standing, along with the recognized exceptions to this limitation, and found that

[t]he record of this case reveals that neither of [the] exceptions [to the prohibition on organizational standing] applies to the organizational plaintiffs here. There is no evidence in the record that these organizations as entities suffered any harm from the 1997 Amendments. Nor are there any allegations to that effect in the unverified complaint.

Moreover, with regard to standing in a representational capacity, the record is silent about the organizational plaintiffs' members and whether those members themselves meet the standing requirements to bring this case. The complaint contains only a bare and inadequate statement that plaintiff Pennsylvania Prison Society "brings this action in its own right and on behalf of its members, including prisoners and adult individuals interested in its above mentioned purposes." Similarly, although the complaint alleges that plaintiff Graterfriends' "membership totals approximately 3,300 individuals, many of whom are life sentenced prisoners," there are no specific facts in the record regarding Graterfriends' individual members and whether any of them meets the standing requirements to pursue the present claims. Neither has Graterfriends itself carried its burden of establishing its own standing by record evidence.

The standing of the remaining organizational plaintiffs -- Fight for Lifers, Friends Committee to Abolish the Death Penalty and Pennsylvania Abolitionists United Against the Death Penalty -- suffers from the same defects.

*Pa. Prison Soc'y*, 508 F.3d at 163-165 (citations omitted).

> ### 1. Plaintiffs Fight For Lifers, Graterfriends, Friends Committee to Abolish the Death Penalty, and Pennsylvania Abolitionists United Against the Death Penalty

At the beginning of the evidentiary hearing held by the Court as part of the renewed period of discovery in this case, Plaintiffs' counsel represented to the Court that "[a]ll the organizations other than the Pennsylvania Prison Society have either ceased to exist or do not purport to meet the criteria for organizational standing." (June 2, 2008 Trans, Doc. 167, at 3:17-19.) Based on this representation, and finding no other evidence indicating that these Plaintiffs satisfy either of the criteria providing an exception to the general prohibition on organizational standing, the Court finds that Plaintiffs Fight For Lifers, Graterfriends, Friends Committee to Abolish the Death Penalty, and Pennsylvania Abolitionists United

Against the Death Penalty do not have standing and will dismiss these Plaintiffs from the current action.

### 2.    Plaintiff Pennsylvania Prison Society

On June 2, 2008, the first day of a three-day evidentiary hearing concerning the issue of standing, the Plaintiffs sought to introduce evidence and testimony in attempt to show that the Pennsylvania Prison Society does, in fact, have standing in the current action.  When Plaintiffs sought to introduce this evidence, the Defendants argued that the "law of the case at this point . . . [states that] the prison society is not entitled to try to gain standing at this point.  It's already been ruled upon by the third circuit." (June 2, 2008 Trans., Doc. 167, at 6:19-23.)  In response, Plaintiffs argued that the Third Circuit Court of Appeals' decision referred only to the organizations that Plaintiffs acknowledge do not have standing.  (*Id.*, at 7:4-6.)  Thus, Plaintiffs argued that "the prison society does have standing and it is in the exact same position as the individual inmates in terms of not having had the ability to show standing because it wasn't an issue before."  (*Id.*, at 7:6-10.)  After receiving the parties' respective arguments, the Court noted that the Court of Appeals' opinion "leave[s] open the question of whether or not [the Pennsylvania Prison Society] can establish the representative capacity of their organization and if there are people who are members of the organization who would otherwise have standing . . .." (*Id.*, at 8:14-18.)  The Court allowed the parties to present evidence concerning the  organizational standing issue and deferred ruling on whether or not the issue was foreclosed by the Court of Appeals' judgment.  (*Id.* at 8:22-9:2.)  Accordingly, the first question before the Court with respect to Plaintiff Pennsylvania Prison Society is whether or not the Court of Appeals November 5, 2007 decision constitutes a final

decision concerning the Pennsylvania Prison Society's standing in this action.

Reviewing the Court of Appeals' decision in this case, the Court first observes that the Third Circuit Court found that "there is no evidence in the record that [the] organizations as entities suffered any harm from the 1997 Amendments . . ., [and] the record is silent about the organizational plaintiffs' members and whether those members themselves meet the standing requirements to bring this case." *Pa. Prison Soc'y*, 508 F.3d at 163. The Court of Appeals also found in a subsequent section that "the voter/taxpayer plaintiffs, *just as the organizational plaintiffs*, do not satisfy the constitutional imperative for standing." *Id.* at 164 (emphasis added). While the Defendants argue that this finding is evidence of the Court of Appeals' intent to foreclose the Pennsylvania Prison Society from presenting this Court with evidence concerning its standing to sue, this Court notes that, in the final line of its November 7, 2007 opinion, the Court of Appeals instructed this Court to conduct "further proceedings . . . to develop the record in order to determine *plaintiffs'* standing to bring this action." *Id.*, at 169 (emphasis added). Taking particular note that the Court of Appeals did not specify certain individuals or classes of Plaintiffs in this final statement, this Court believes that the Court of Appeals' decision instructs this Court to develop the record and determine standing for all plaintiffs in the current case, including the Pennsylvania Prison Society. Having, thus, determined that the Court of Appeals' November 5, 2007 decision does not prevent Plaintiff Pennsylvania Prison Society from presenting evidence and arguments concerning its standing in the present case, the next question before the Court is whether the Prison Society has produced evidence that it does, in fact, have standing to appear before the Court in the current action.

As already discussed, an organization whose members are injured may represent

those members in a proceeding for judicial review when the organization's members would otherwise have standing to sue in their own right, the interests the organization seeks to protect are germane to the organization's purpose, and neither the asserted claim nor requested relief requires the organization's individual members to participate in the lawsuit. *Sierra Club*, 405 U.S. at 739 (citing *Button*, 371 U.S. at 428); *Hunt*, 432 U.S. at 343. During the three-day evidentiary hearing before this Court, Mr. William DiMasco, the executive director of the Pennsylvania Prison Society, testified about the organization's history, purpose, and interest in the current litigation. (*See* June 2, 2008 Trans., Doc. 167, at 9:9-34:19.) As part of his testimony, Mr. DiMasco stated that approximately one hundred (100) of the Prison Society's members are life-sentenced prisoners, and that a number of these prisoners have filed for commutation. (*Id.*, at 10:15-21.) Mr. DiMasco further testified that two of these members, Jackie Lee Thompson and Keith Smith, are life-sentenced prisoners that have received four-to-one (4-1) votes from the Board of Pardons in favor of recommending their applications for review by the Governor since the 1997 Amendments took effect. (*Id.*, at 10:22-11:6.) Mr. Smith and Mr. Thompson also provided testimony concerning their commutation applications, including the majority Board of Pardons votes they received in 2005 and 2004, respectively. (Aug. 6, 2008 Trans., Doc. 211, at 13:22-18:13, 50:9-23.) Mr. Smith and Mr. Thompson also testified that they currently are members of the Pennsylvania Prison Society. (*Id.*, at 26:19-27:2, 56:13-19.) Accordingly, Plaintiff Pennsylvania Prison Society argues (1) that Mr. Smith and Mr. Thompson suffered an injury from the 1997 Amendments when their applications were not forwarded to the Governor for review, in spite of a majority vote from the Board of Pardons, and (2) that their status as Prison Society members allows the Prison Society to bring the current action on their behalf.

23

(Doc. 222, at 5-8.)

Defendants, in contrast, argue that neither Mr. Smith nor Mr. Thompson are parties to the current litigation and that "it is inappropriate for plaintiffs to try to bootstrap standing in such fashion . . . [because] intervention is not a vehicle for reviving an action." (Doc. , at 14.) Defendants also argue that the plaintiffs failed to pursue organizational standing before the Third Circuit Court of Appeals, and have therefore "waived the issue and cannot seek to now litigate it in this court." (*Id*., at 15.)

The Court agrees with the general principal invoked by the Defendants that standing to bring an action cannot be achieved via intervention by parties that were not originally included in the litigation. *See McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980) ("[a] motion for intervention under Rule 24 is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate."); *see also Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965) ("intervention will not be permitted to breath life into a 'nonexistent' law suit."). The Court, however, believes that the Pennsylvania Prison Society has presented sufficient evidence to show that its involvement in this case satisfies the so-called "organizational exception" to the prohibition on third party standing and that the Prison Society's standing to bring this action on behalf of its members is appropriate regardless of Mr. Smith and Mr. Thompson's attempted intervention in this case.

As already noted,

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt*, 432 U.S. at 343. In the current case, two members of the Pennsylvania Prison

24

Society, Mr. Smith and Mr. Thompson, testified that they have received four-to-one (4-1) Board of Pardons votes after the 1997 Amendments took effect. Thus, Mr. Smith and Mr. Thompson suffered an injury due to the 1997 Amendments when their applications were not forwarded to the Governor for review, and would both have standing to sue in their own right. Second, the Court believes that the interests that the Pennsylvania Prison Society now seeks to assert are certainly germane to the Prison Society's purpose, as stated in the Second Amended Complaint, "to advocate for a humane, just, and restorative correctional system, and to promote a rational approach to criminal justice issues." (Doc. 22, ¶ 5.) Finally, the Court does not believe that either the claim asserted or the relief requested requires the participation of individual Prison Society members in the lawsuit since this suit alleges that the 1997 Amendments to the Pennsylvania Constitution impact several life-sentenced prisoners in Pennsylvania and violate the *Ex Post Facto* Clause of the United States Constitution. Accordingly, the Court finds that the evidence clearly shows that Pennsylvania Prison Society satisfies all of the requirements needed to qualify for the organizational exception to the prohibition on third party standing and may pursue relief on behalf of its members.

In its March 13, 2006 Memorandum and Order, the Court granted summary judgment in favor of the Plaintiffs on the basis of its finding that

> [t]o retroactively apply changes in the voting requirements of the Board of Pardons, from requiring a majority to requiring unanimity, following the 1997 amendments that adversely affect the length of punishment for life sentenced prisoners seeking commutation, violates the *Ex Post Facto* Clause."

(Doc. 91, at 19.) Pursuant to the Third Circuit Court of Appeals' Judgement, the Court granted an extended period of discovery allowing the parties to develop the record on the

issue of standing and, on the basis of evidence produced through this discovery period, has determined that the Pennsylvania Prison Society does, in fact, have standing to sue in the current action. Accordingly, the Court will, on the basis of the findings set forth in its March 13, 2006 Memorandum and Order, grant summary judgment in favor of Plaintiff Pennsylvania Prison Society on its *Ex Post Facto* claim concerning the change in voting requirements.

### C.    Voter/Taxpayer Plaintiffs

In its decision, the Court of Appeals' discussed the seven named Plaintiffs in this litigation "who are adult, competent individuals residing in Pennsylvania, and are qualified voters and taxpayers in Pennsylvania." *Pa. Prison Soc'y*, 508 F.3d at 164. After finding that "there is no evidence that these individuals have an interest in anything more than mere generalized grievances of concerned citizens" and reviewing the general prohibition on standing based on general, non-particularized grievances, the Court of Appeals held that "the voter/taxpayer plaintiffs. . . do not satisfy the constitutional imperative for standing." *Id.*

The Plaintiffs presented no further evidence in favor of standing for the voter/taxpayer Plaintiffs during the expanded discovery period. Thus, the Court finds that these Plaintiffs do not have standing to bring the current action and will dismiss them from this case.

### II.    Intervention

Rule 24 of the Federal Rules of Civil Procedure provides for a person's intervention into an existing action. There are two distinct types of intervention – intervention as of right, see Fed. R. Civ. P. 24(a), and permissive intervention, see Fed. R. Civ. P. 24(b). In their Motion to Intervene, Mr. Smith and Mr. Thomson ask this Court "to allow them to intervene"

in the current litigation.  Rule 24(b) governs permissive intervention, providing that:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

F ED. R. CIV. P. 24(b).  The Court has discretion under Rule 24(b) to grant or deny an application for permissive intervention. *Id.*; *see also Hoots v. Pennsylvania*, 672 F.2d 1133, 1135-36 (3d Cir. 1982).

> The burden . . . is on the applicant for intervention to show that his interests are not adequately represented by the existing parties.  This burden may be discharged in two ways.  The applicant may demonstrate that is interests, though similar to those of an existing party, are nevertheless sufficiently different that the representative cannot give the applicant's interest proper attention.  Alternatively, the applicant may establish collusion between the representative and an opposing party, or an indication that the representative has not been diligent in prosecuting the litigation.

*Hoots*, 672 F.2d at 1135 (citations omitted).  When "the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be "undue." *Id*. at 1136.

On the basis of the discretion provided to district courts by Federal Rule 24(b), the Court will deny Mr. Smith and Mr. Thompson's Motion to Intervene in the current case.  In reaching its decision to deny Smith and Thompson's motion, the Court first notes that the sole remaining Plaintiff in the current action, the Pennsylvania Prison Society, has zealously pursued this litigation since October of 1997.  The Court finds no evidence, and Mr. Smith and Mr. Thompson present no argument, suggesting that the Pennsylvania Prison Society

has not been diligent in prosecuting the current litigation or has not given the interests of its constituent members adequate attention. Second, the Court takes note that Mr. Thompson and Mr. Smith did not attempt to intervene into the current action until December 2007, after the Court of Appeals had vacated this Court's Order granting summary judgment and remanded the case for further proceedings, even though Smith and Thompson testified that they received their majority Board of Pardons votes more than two years before their attempted intervention.

Thus, the Court believes (1) that the interests of Mr. Smith and Mr. Thompson are adequately represented by the Pennsylvania Prison Society and (2) that their intervention into this case, after this Court's grant of summary judgment and the Court of Appeals' remand, would be purely superfluous and add unnecessary complexities that could potentially cause undue delay in the resolution of this case. The Court will, accordingly, exercise its discretion and deny Keith Smith and Jackie Lee Thompson's Motion to Intervene.

**CONCLUSION**

For the reasons set forth above, the Court finds that individual prisoner Plaintiffs Roger Buehl, Vincent Johnson, and Douglas Hollis do not have standing and will be dismissed from the current case. The Court also finds that organizational Plaintiffs Fight For Lifers, Graterfriends, Friends Committee to Abolish the Death Penalty, and Pennsylvania Abolitionists United Against the Death Penalty do not have standing and will dismiss these Plaintiffs from the current action. The Court also finds that so-called "voter" Plaintiffs Julia D. Hall, Gregory H. Knight, William Goldsby, Joan Porter, Joan F. Gauker, Kurt Rosenburg and Diana Hollis do not have standing and will dismiss these Plaintiffs from the current

action.

The Court does, however, find that Plaintiff Pennsylvania Prison Society satisfies the requirements to qualify for the exception to the general prohibition of third-party standing. Since the Prison Society has standing to assert the rights of its members in the current case, the Court will reinstate its March 13, 2006 Memorandum and Order in which the Prison Society's motion for summary judgement was granted, in part, with regard to the Prison Society's *ex post facto* claim concerning the change in voting requirements. This reinstated Order also denies the Prison Society's summary judgment motion with respect to the Plaintiff's *ex post facto* claim relating to the inclusion of a crime member on the Board of Pardons. Likewise, the reinstated Order grants Defendants' motion for summary judgment with respect to Plaintiff's due process claim and *ex post facto* claim concerning the inclusion of a crime victim on the Board, while denying Defendants' motion with respect to the Prison Society's *ex post facto* claim concerning the change in voting requirements.

Finally, having found that their interests are adequately represented by original Plaintiff, the Pennsylvania Prison Society, and that their participation in this case would be purely superfluous and add unnecessary complexities potentially causing undue delay in the case's resolution, the Court will deny Keith Smith and Jackie Lee Thompson's Motion to Intervene.

An appropriate order follows.


 June 11, 2009                                                      /s/ A. Richard Caputo                          
Date                                                                      A. Richard Caputo
                                                                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PENNSYLVANIA PRISON SOCIETY, et al.,

       Plaintiffs,

          v.

PEDRO A. CORTES, Secretary of the Commonwealth of Pennsylvania, et al.,

       Defendants.

CIVIL ACTION NO. 1:CV-97-1731

(JUDGE CAPUTO)

<u>**ORDER**</u>

**NOW**, this ___11th___ day of June, 2009, **IT IS HEREBY ORDERED** that:

(1)      Individual prisoner Plaintiffs Roger Buehl, Vincent Johnson, and Douglas Hollis; organizational Plaintiffs Fight For Lifers, Graterfriends, Friends Committee to Abolish the Death Penalty, and Pennsylvania Abolitionists United Against the Death Penalty; and "voter" Plaintiffs Julia D. Hall, Gregory H. Knight, William Goldsby, Joan Porter, Joan F. Gauker, Kurt Rosenburg and Diana Hollis are **DISMISSED** from this case for lack of standing.

(2)      The Court's March 13, 2006 Order (Doc. 91) is **REINSTATED** with respect to Plaintiff Pennsylvania Prison Society:

      (A)     Defendants' Motion for Summary Judgment (Doc. 84) is **GRANTED in part** and **DENIED in part**:

            (i)     Defendants' motion is **GRANTED** with regard to Plaintiff's Due Process claim.

            (ii)     Defendants' motion is **GRANTED** with respect to Plaintiff's *Ex Post Facto* claim concerning the inclusion of a crime victim on the Board.

            (iii)     Defendants' motion is **DENIED** with respect to Plaintiff's *Ex Post Facto* claim concerning the change in voting requirements.

      (B)     Plaintiff's Amended Motion for Summary Judgment (Doc. 82) is **GRANTED in part** and **DENIED in part**:

        (i)      Plaintiff's motion is **DENIED** with respect to Plaintiff's *Ex Post Facto* claim concerning the inclusion of a crime victim on the Board.

        (ii)     Plaintiff's motion is **GRANTED** with respect to Plaintiff's *Ex Post Facto* claim concerning the change in voting requirements.

(3)      Keith Smith and Jackie Lee Thompson's Motion to Approve Consent Judgment, Proposed Motion to Intervene (Doc. 203) and Motion to Amend/Correct the Motion to Approve Consent Judgment (Doc. 207) are **DENIED**.

(4)      The Clerk of the Court shall mark this case **CLOSED**.


                    /s/ A. Richard Caputo
                    A. Richard Caputo
                    United States District Judge